No.  92-570

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

AUGUSTA GEIGER,

       Plaintiff and Appellant,

  v.

THE DEPARTMENT OF REVENUE
OF THE STATE OF MONTANA,

       Defendant and Respondent.



FILED

SEP - 8 1993

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Seventh Judicial District,
                In and for the County of Dawson,
                The Honorable Richard G. Phillips, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           John Houtz; Attorney at Law, Forsyth, Montana

       For Respondent:

           W. Anderson Forsythe and Martha Sheehy;
           Moulton, Bellingham, Longo, & Mather,
           Billings, Montana

                        Submitted on Briefs:  April 15, 1993

                                 Decided:  September 8, 1993

Filed:

_____
          Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Augusta Geiger appeals from an order of the Montana Seventh Judicial District Court, Dawson County, granting the Department of Revenue's motion for directed verdict following Geiger's presentation of her case in chief to the jury. In its order, the Court ruled that the DOR could not be found liable for negligent business decisions.

We affirm the District Court's conclusion, but do so on different grounds.

We determine the dispositive issue to be as follows:

What duty did the DOR owe plaintiff in operating the Assessor's Office in Dawson County, Montana?

Augusta Geiger began working in the Dawson County Assessor's Office in 1955, and was elected Dawson County Assessor in 1978. She was reelected to the position in 1982 after running against Terry Cantwell, an employee in the Assessor's Office. On February 24, 1984, Geiger resigned from her elected position.

This case arises out of three incidents which occurred during Geiger's second term as Dawson County Assessor and which she alleges caused her to resign. The first incident occurred after the second election. Geiger's and Cantwell's working relationship deteriorated to such a degree that Geiger only communicated to Cantwell by written correspondence, although they worked in the same office. Geiger believed that Cantwell's work performance was poor and requested Jesse Munro (Bureau Chief and Geiger's immediate supervisor at DOR) to speak with Cantwell. Munro responded by

2

letter stating that given Geiger's failure to follow the proper methods for disciplining and dismissal, it would not be appropriate to discipline or fire Cantwell. Cantwell quit her job in January 1983.

The second incident occurred when the Dawson County Assessor's Office became computerized in the early part of 1983. Because of problems stemming from computerization and a cutback in employees, the office began to fall behind in its work. Geiger requested additional help from Munro in order for the office to meet its deadlines. Munro denied the request. Geiger then called the Director of the DOR. As a result of that telephone call for more help, the DOR temporarily assigned the Cascade County Assessor to the Dawson County office. During the two-month period the Cascade County Assessor worked in the Dawson County office, the DOR suspended Geiger's authority to hire and fire state employees and transferred it to the Cascade County Assessor. After the Cascade County Assessor completed the required work, he left and the DOR restored Geiger's authority, with the exception that she could not hire and fire state employees. Geiger testified that the Cascade County Assessor's presence in the office was part of the problem resulting in her resignation.

The third incident was the DOR's audit of the Dawson County office. The audit occurred in September 1983. The report identified several problems with the Dawson County office, including violations of state law, administrative rules, and DOR policy. The audit report consisted of 118 pages which pointed to

3

problems in the office and suggested various solutions to correct personnel problems and meet assessment deadlines as required by law. Because of these incidents, Geiger resigned her elected office.

On September 4, 1984, Geiger filed a complaint in Dawson County District Court against the DOR. The District Court dismissed the Dawson County Commissioners from this action on July 7, 1988. The dismissal occurred because of the Dawson County Commissioners' successful appeal in Cantwell v. Geiger (1987), 228 Mont. 330, 742 P.2d 468. On September 27, 1990, the District Court granted the DOR's motion to dismiss, based upon the pleadings. On August 27, 1991, in an unpublished opinion, this Court reversed and remanded the District Court's order.

On April 27, 1992, the District Court granted the DOR partial summary judgment by dismissing Geiger's claim for constructive discharge. The District Court allowed Geiger's claim to proceed because she alleged the DOR was negligent in its management of the Dawson County Assessor's Office.

Jury trial was held on June 24 and 25, 1992. The court granted the DOR's motion for a directed verdict following the presentation of Geiger's case-in-chief. Geiger appeals.

What duty did the DOR owe plaintiff in operating the Assessor's Office in Dawson County, Montana?

Generally, the State is subject to suit and is liable for its torts. Mont. Const. art. II, § 18 (1972); § 2-9-102, MCA. A fundamental tenet in the law of torts is that "'there can be no

4

negligence if no duty exits.'" Quirin v. Weinberg (1992), 252 Mont. 386, 391, 830 P.2d 537, 539 (quoting Ambrogini v. Todd (1981), 197 Mont. 111, 118, 642 P.2d 1013, 1017). The tort of negligence arises when a person has a legally recognized duty, the person breaches that duty, the breach of the duty acts as a legal cause of another's injury, and the injury results in actual loss or damage. Thornock v. State (1987), 229 Mont. 67, 72, 745 P.2d 324, 327. We have stated that "[w]hether or not a duty exists is a question of law. When reviewing questions of law, we will determine if the trial court's determination as to the law is correct. Our review will be plenary." Quirin, 830 P.2d at 540.

We affirm the decision of the District Court but on different grounds--namely that Geiger failed to establish a prima facie case for negligence because she failed to establish that the DOR owed her a duty. Where the conclusion of the district court is correct, it is immaterial, for the purpose of affirmance on appeal, what reasons the district court gives for its conclusion. Bolz v. Myers (1982), 200 Mont. 286, 295-96, 651 P.2d 606, 611.

Geiger alleges that the DOR was negligent in failing to provide personnel when requested, that it improperly supervised its employee Cantwell, that the DOR improperly investigated complaints made by Cantwell, and that the DOR acted unlawfully by suspending Geiger's authority to hire and fire State employees.

The role of the DOR in supervising county assessor offices in Montana is unique. Although the relationship between the DOR and the county assessors closely resembles an employment relationship

5

because of the supervisory nature of the DOR mandated by statute, the relationship does not rise to the level of an employer and employee.

Prior to 1973, county assessors assessed property according to their local appraisal system. To equalize property assessments statewide, the legislature amended § 15-8-102, MCA, to make county assessors agents of the DOR. Cantwell, 742 P.2d at 470. The county assessor is an agent of the DOR for the purpose of locating and providing the DOR with a description of all taxable property within the county. Section 15-8-102(1), MCA. The Legislature gave the DOR full charge of assessing all property subject to taxation in equalizing values. The DOR is required to secure the necessary personnel to perform its duties. Section 15-8-101, MCA. Statutes mandate that the DOR supervise the assessment function to insure that it is properly carried out. Section 15-1-201(1)(a), MCA. The DOR is required to provide education and certification of county assessors. Sections 15-8-103, -105, and -106, MCA (1989).

The changes made in 1973 removed the county commissioners' authority to supervise the internal operations of the assessor's office and placed it with the DOR. Cantwell, 742 P.2d at 470. Even so, the county assessor remained an elected or appointed position and served at the will of the electorate or appointing power. Section 7-4-2203, MCA. County assessors and their deputies are paid by the county. Sections 7-4-2503 and -2505, MCA. The employees of the assessor's office are state employees who are hired by the DOR. The DOR has the power and responsibility for the

6

hiring, firing, and assignment of duties of employees in a county assessor's office, except for the county assessors and their deputies. Section 15-8-101, MCA. Therefore, Geiger was not an employee of the DOR but was an elected official "employed" by her constituents. As an elected official, Geiger could only be removed if the electorate chose to recall her or if she was convicted of official misconduct. Sections 21-16-603 and 45-7-401, MCA.

All the testimony and evidence offered by Geiger related to actions which the DOR had statutory authority to perform and did not violate any duty owed to Geiger. For example, the DOR had established a formula in allocating personnel to the various counties. Geiger testified that other county assessor offices were going through personnel reductions in 1981. Geiger admitted that other counties situated similarly could work with three employees and that the DOR's allocation was fair.

The DOR's refusal to fire Cantwell does not establish a violation of the DOR's supervisory obligation. Munro sent a letter to Geiger addressing Cantwell's situation which stated that Geiger failed to take the proper measures required for discipline and dismissal. During trial, Geiger admitted that she agreed with the DOR's handling of Cantwell's employment situation.

When Geiger's office failed to meet the deadlines for tax assessments, the DOR acted within its authority to suspend Geiger's authority to hire and fire employees. The DOR also acted within its authority to audit Geiger's office when it appeared that the office was having constant trouble meeting its statutory

7

obligations. The DOR's evaluation and criticism of the Dawson County Assessor's office was not a breach of a statutory duty but was the performance of a statutory obligation.

The DOR removed only that authority it had delegated to Geiger, and not any statutory authority that was inherent in the elected position. Geiger resigned from her position voluntarily and was not removed by the DOR. The DOR did not violate any statutory or general duty owed to Geiger. Therefore, we hold that the District Court did not err in granting the directed verdict in favor of the DOR.

We affirm the decision of the District Court based on Geiger's failure to establish a prima facie case for negligence on the part of the DOR.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

September 8, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

John Houtz
Attorney at Law
P.O. Box 1230
Forsyth, MT 59327

W. Anderson Forsythe & Martha Sheehy
Moulton, Bellingham, Longo & Mather, P.C.
P.O. Box 2559
Billings, MT 59103

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *M. Tudor*
    Deputy